**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 20-cv-01824-CMA-NYW

CELIA GONZALEZ DE GOMEZ, as surviving spouse
and personal representative of the Estate of Luis Gomez Ciprez,

       Plaintiff,

v.

ADAMS COUNTY,
ADAMS COUNTY SHERIFF'S OFFICE,
ADAMS COUNTY WORK RELEASE,
RICHARD A. REIGENBORN, in his individual and official capacities,
VINCENT E. SAUTER, in his individual and official capacities,
CORY A WILLS, in his individual and official capacities,
WELLPATH, and
JOHN DOES 1-10,

       Defendants.

---

**ORDER AFFIRMING RECOMMENDATION AND
GRANTING MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Plaintiff's[1] Objections ("Doc. # 50) to

Magistrate Judge Nina Y. Wang's Recommendation (Doc. # 49) to Deny Plaintiff's

Motion for Leave to Amend. This matter is also before the Court on Defendants' Motion

for Summary Judgment (Doc. # 56). For the following reasons, the Court overrules

---

[1] This action was brought by Ms. Celia Gonzales de Gomez, as Mr. Gomez Ciprez's surviving spouse and as the personal representative of Mr. Gomez Ciprez's estate. Accordingly, the Court will refer to Plaintiff as "Plaintiff."

Plaintiff's Objections and adopts Judge Wang's Recommendation. Further, the Court grants Defendants' Motion for Summary Judgment.

## I.     BACKGROUND

### A.     FACTUAL BACKGROUND

This case arose from the death of Luis Gomez Ciprez while in custody in Adams County. In 2019, Mr. Gomez Ciprez pled guilty to a criminal charge and was sentenced to a 120-day work release program through the Adams County Detention Facility (the "Adams County Jail"). (Doc. # 1 at ¶¶ 2, 18–19.) As part of his work release application, Mr. Gomez Ciprez stated on his medical information sheet that he suffered from liver cirrhosis, hepatic encephalopathy, and hypertension; he was prescribed medication to treat these conditions. (Doc. # 1 at ¶¶ 19, 21.)

Mr. Gomez Ciprez was admitted to the Adams County Work Release program's custody on April 20, 2019. (Doc. # 1 at ¶ 28.) The Adams County Work Release program is not a separate and distinct legal entity from the Adams County Sheriff's Office. (Doc. # 56-1 at 4 ¶ 5.) Further, Plaintiff does not dispute that Adams County Work Release has not been served in this lawsuit.

Wellpath, the company that provides medical care to Adams County Jail inmates, oversaw Mr. Gomez Ciprez's medical care related to his medical conditions. (Doc. # 1 at ¶ 9; Doc. # 56-1 at 5 ¶ 14.) However, Mr. Gomez Ciprez was responsible for taking the medications while he was outside the Adams County Jail on work release. (Doc. # 56-1 at 5 ¶ 12.)

Plaintiff alleges in the Complaint that Adams County Jail failed to provide Mr. Gomez Ciprez with his prescription medications and, as a result, he was hospitalized and ultimately died. (Doc. # 1 at ¶¶ 45–46.) However, Plaintiff admits that Mr. Gomez Ciprez chose not to take his medication while on work release (Doc. # 56-1 at 4 ¶ 2), and he was hospitalized on the last day of his work release program on July 17, 2019 (Doc. # 1 at ¶ 45). Mr. Gomez Ciprez died out of custody, while in the hospital following several surgeries. (Doc. # 56-1 at 4 ¶¶ 2, 4, 7.)

Plaintiff admits that Mr. Gomez Ciprez's cause of death was not related to actions taken by Adams County. (Doc. # 56-1 at 4 ¶ 4; 6 ¶¶ 16–17.) Rather, Mr. Gomez Ciprez's cause of death was related to complications from a surgery he had after he was released from Adams County Jail. (Doc. # 56-1 at 4 ¶ 7.)

Plaintiff brought suit against Adams County, the Adams County Sheriff's Office, Adams County Work Release, Sheriff Richard A. Reigenborn, Work Release Supervisor Vincent E. Sauter, and Cory A. Willis. Plaintiff filed four causes of action against all Defendants: (1) Violations of the Eighth and Fourteenth Amendment; (2) Constitutional Denial of Due Process; (3) Wrongful Death under Colorado law; and (4) Negligent Failure to Train/Supervise Officers under Colorado law. (Doc. # 1.)

## B.   WELLPATH'S MOTION TO DISMISS & PLAINTIFF'S MOTION FOR RECONSIDERATION

On September 4, 2020, Wellpath moved to dismiss the claims against it, arguing that Plaintiff had failed to state a claim for relief. (Doc. # 22.) On September 24, 2021, Judge Wang entered a Scheduling Order in this case, setting a deadline for the joinder

of parties and amendment of pleadings of October 16, 2020. (Doc. # 27.) Plaintiff did

not move to amend pleadings prior to October 16, 2020.

      On February 23, 2021, Judge Wang recommended dismissing the claims against

Wellpath, without prejudice. (Doc. # 35.) On March 9, 2021, Plaintiff filed a motion for

leave to file an amended complaint, which was stricken for failure to comply with the

Local Rules. (Doc. ## 36–38.) On April 2, 2021, Plaintiff filed a second Motion for Leave

to File an Amended Complaint, which was referred to Judge Wang. (Doc. # 39.) Plaintiff

sought to add new defendants and to add new arguments against Wellpath. After the

second Motion for Leave to Amend was filed, this Court adopted Judge Wang's

recommendation to dismiss the claims against Wellpath, without prejudice. (Doc. # 41.)

      Wellpath did not respond to the second Motion for Leave to Amend. On August

13, 2021, Judge Wang denied the second Motion for Leave to Amend as moot. (Doc. #

45.) Plaintiff did not object to the August 13, 2021, order denying the second Motion for

Leave to amend as moot. Instead, Plaintiff filed a Motion for Reconsideration, arguing

that the Second Motion for Leave to Amend is not moot and that amendment should be

allowed as a matter of right. (Doc. # 46.)

      On October 6, 2021, Judge Wang recommended that the Motion for

Reconsideration be granted in part and denied in part. (Doc. # 49.) Judge Wang

determined that the second Motion for Leave to Amend was mistakenly denied as moot

and should be reinstated. (Doc. # 49 at 7–8.) However, Judge Wang also recommended

that the second Motion for Leave to Amend be denied without prejudice because

Plaintiff failed to meet the legal standard of amending after a court-imposed deadline to do so. Plaintiff objected to the Recommendation on October 15, 2021. (Doc. # 50.)

**C.    Adams County Defendants' Motions for Summary Judgment**

On December 20, 2021, Defendants Adams County, Adams County Sheriff's Office, Sheriff Richard Reigenborn, Vincent Sauter, and Cory Wills (collectively "Adams County Defendants") moved for summary judgment on Plaintiff's claims. (Doc. # 56.) Adams County Defendants' Motion for Summary Judgment is based on Plaintiff's Complaint (Doc. # 1) and Plaintiff's failure to respond to requests for admission during discovery.

Specifically, on August 31, 2021, Adams County served its First Set of Discovery to Plaintiff, including Defendants' first requests for admission. (Doc. # 56-1 at 1.) Plaintiff's responses were due within 30 days after service, on or before September 30, 2021. *Bergemann v. United States*, 820 F.2d 1117, 1118 (10th Cir. 1987) (noting that Rule 36 requires answers to requests for admission within 30 days after service). However, as of the time of filing the Motion for Summary Judgment, on December 20, 2021—111 days after the requests for admission were served—Plaintiff had not served a response. (*Id.*) As a result, Adams County Defendants construed the requests for admission as admitted by operation of Fed. R. Civ. P. 36(a)(3).

## II.   <u>ANALYSIS</u>

**A.   THE RECOMMENDATION & OBJECTION**

1. <u>Legal Standards</u>

   a.  *Review of Recommendation*

A magistrate judge may issue orders on nondispositive motions only, but "[w]hether motions to amend are dispositive is an unsettled issue" in the Tenth Circuit. *Cano-Rodriguez v. Adams Cty. Sch. Dist. No. 14*, No. 19-CV-01370-CMA-KLM, 2020 WL 6049595, at *1 n.2 (D. Colo. July 23, 2020). Because denial of the motion for leave to amend may be viewed as dispositive if it precludes Plaintiff's claims, the Court treats Judge Wang's Recommendation as dispositive in this case.

Under 28 U.S.C. § 636(a)(1)(B), this Court may designate a magistrate judge to consider dispositive motions and submit recommendations to the Court. When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996). In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

###### b. *Amendment of Pleadings*

A "Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*, 300 F.R.D. 678, 681 (D. Colo. 2014). Accordingly, Rule 16(b)(4) of the Federal Rules of Civil Procedure provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The purpose of the deadline to amend pleadings and join parties is to ensure that discovery proceeds in an orderly fashion. *See Valles v. Gen-X Echo B, Inc*., 13-cv-00201-RM-KLM, 2013 WL 5832782, *3 (D. Colo. Sept. 27, 2013). Thus, when a party seeks to amend pleadings after the deadline to do so, the Court's consideration is subject to a two-prong analysis. First, the party must establish good cause under Rule 16(b)(4). *Gorsuch, Ltd., B.D. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). Only if the party establishes good cause does the Court turn its analysis to Rule 15(a). *Id.* at 1242.

###### 2. Discussion

Plaintiff argues that the magistrate judge erred by failing to apply Rule 15(a)(2) instead of Rule 16(b)(4) to her motion for leave to amend. Because Plaintiff's argument is legally incorrect, the objection must be overruled.

As the Court explained above, Rule 16(b)(4) only allows amendments to scheduling orders for good cause. Fed. R. Civ. P. 16(b)(4). The good cause standard "requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay" in

moving to amend. *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) (quoting

*Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994)). In other words, a party

establishes good cause when it demonstrates that the deadline in the Scheduling Order

could not have been met despite diligent efforts. *Pumpco, Inc. v. Schenker Int'l, Inc.*,

204 F.R.D. 667, 668 (D. Colo. 2001).

In this case, the magistrate judge correctly noted that Plaintiff did not address the

good cause standard <u>at all</u> in the Motion for Leave to Amend. (*See* Doc. # 39.) Plaintiff

sought amendment nearly six months after the deadline set forth in the Scheduling

Order. (*Compare* Doc. # 27, setting amendment deadline of October 16, 2020, *with*

Doc. 39, filing motion for leave to amend on April 2, 2021.) Accordingly, Plaintiff was

required to show why the amendment deadline could not have been met by

demonstrating good cause under Rule 16. Because Plaintiff failed to address the correct

legal standard, the magistrate judge correctly denied the motion for leave to amend,

without prejudice.

Plaintiff appears to argue that the magistrate judge should have taken her brief

and implied a good cause argument, despite neither "good cause" nor "Rule 16"

appearing in the brief. However, as noted by the magistrate judge, Plaintiff is

represented by counsel, and it is not the magistrate judge's or this Court's duty to craft

legal arguments on behalf of a party. *See United States v. Davis*, 622 F. App'x 758, 759

(10th Cir. 2015) (unpublished) ("[I]t is not this court's duty, after all, to make arguments

for a litigant that he has not made for himself"); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d

790, 800 n.10 (10th Cir. 2001) (observing that the court has no obligation to make

arguments or perform research on behalf of litigants). Accordingly, because Plaintiff failed to raise any argument under Rule 16(b), Plaintiff failed to establish good cause to justify the amendment of the Scheduling Order and the late Motion for Leave to Amend. *See Husky Ventures, Inc. v. B55 Invs., Ltd*., 911 F.3d 1000, 1020 (10th Cir. 2018) (affirming denial of motion to amend where the movant made "no arguments to show good cause for late amendment of the pleadings").

Plaintiff also blames the magistrate judge for her failure to timely amend, arguing that "the passage of time between the scheduling order deadline and Plaintiff's filing of the motion to amend was primarily attributable to the Magistrate's delay in making a recommendation regarding Wellpath's 12(b)(6) as the scheduling order deadline had expired by nearly six months when the Magistrate filed her Recommendation." (Doc. # 50 at 6.)

Plaintiff's attempt to place blame is not well taken. Plaintiff's "current predicament is fundamentally due to [her] own failure" to include allegations in her original complaint or seek amendment before the deadline to do so. *Bank of New York Mellon v. SFR Invs. Pool 1, LLC*, 17-cv-479-JCM-NJK, 2018 WL 3550254, at *2 (D. Nev. July 24, 2018). Plaintiff could have sought amendment of the Complaint while Wellpath's motion to dismiss was pending, particularly given that the alleged deficiencies as to Wellpath were outlined in Wellpath's motion to dismiss. In her Motion for Leave to Amend, Plaintiff offers absolutely no explanation regarding why amendment was not sought prior to the deadline to do so.

Further, the new allegations in the proposed amended complaint were available to Plaintiff at the time she filed her original complaint. For example, Plaintiff seeks to add numerous individual healthcare providers to this action. (Doc. # 39-2.) Similarly, Plaintiff seeks to add several allegations regarding statements and information contained in Mr. Gomez Ciprez's medical records. (*See* Doc. # 39-2 at 21–22.) Given Plaintiff's access to Mr. Gomez Ciprez's medical records, it is unclear why Plaintiff did not identify these individuals or additional allegations in the original complaint.

In short, Plaintiff failed to include the proper legal standard in her second Motion for Leave to Amend. Instead of seeking further leave of the Court and addressing the proper legal standard, Plaintiff filed an Objection and blamed the magistrate judge for Plaintiff's deficient motion. This is insufficient. As set forth above, because Plaintiff failed to demonstrate good cause and also failed to address Rule 16, the Court overrules Plaintiff's Objection and affirms and adopts the magistrate judge's Recommendation.

**B.    THE MOTION FOR SUMMARY JUDGMENT**

1.    <u>Summary Judgment & Qualified Immunity Legal Standard</u>

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for

summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *See id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

Further, when a defendant asserts qualified immunity,[2] the summary judgment standard is subject to a "somewhat different analysis from other summary judgment rulings." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006). Once the defense of qualified immunity is raised, the burden shifts to the plaintiff to show (1) "that the defendant's actions violated a specific statutory or constitutional right," and (2) that the right was "clearly established at the time of the conduct at issue." *Id.*; *see also Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015) (the qualified immunity defense "trigger[s] a well-settled twofold burden" that the plaintiff is "compelled to shoulder.").

"It is only after plaintiff crosses the legal hurdle comprised of her two-part burden of demonstrating the violation of a constitutional right that was clearly established, that courts should be concerned with the true factual landscape[.]"[3] *Id.* at 1326 (emphasis in original). Considering the true factual landscape, "courts should determine whether defendant can carry the traditional summary judgment burden of establishing that there

---

[2] "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[3] "In determining whether a plaintiff has carried its two-part burden . . . ordinarily courts must adopt plaintiff's version of the facts." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1325 (10th Cir. 2009) (Holmes, J., concurring) (internal quotations and citation omitted). However, "plaintiff's version of the facts must find support in the record." *Id.*

are no genuine issues of material fact for jury resolution and that defendant is entitled to judgment as a matter of law." *Id.*

    2.  <u>The Requests for Admission are Deemed Admitted</u>

    "Rule 36(a) provides that '[a] party may serve upon any other party a written request for the admission' of the truth of certain matters." *Raiser v. Utah County*, 409 F.3d 1243, 1246 (10th Cir. 2005) (quoting Fed. R. Civ. P. 36(a)). "If the receiving party fails to respond to the request within 30 days, or within such other time as the court may allow, the matter is deemed admitted." *Id.* If a matter is admitted, it "is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Fed. R. Civ. P. 36(b).

    A party can move for relief from the deemed admissions by filing a Rule 36(b) motion requesting the court to permit amendment or withdrawal. Alternatively, the Tenth Circuit has held "that a response to a motion for summary judgment arguing in part that the opposing party should not be held to its admissions can constitute a Rule 36(b) motion to withdraw those admissions." *Bergemann v. United States*, 820 F.2d 1117, 1120–21 (10th Cir. 1987). The court may exercise its discretion to permit withdrawal or amendment "when [1] the presentation of the merits of the action will be subserved thereby and [2] the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." *Raiser*, 409 F.3d at 1246 (internal citations omitted).

    In this case, Defendants served discovery requests, including 17 requests for admission, on August 31, 2021. (Doc. # 56-1.) The responses were due 30 days later,

on September 30, 2021. At the time Defendants filed the Motion for Summary

Judgment, on December 20, 2021, Plaintiff had not responded to the discovery

requests, which had been served 111 days prior to the Motion for Summary Judgment.

(Doc. # 56-1 at ¶ 7.) Accordingly, Defendants construed the requests for admission as

admitted by operation of Fed. R. Civ. P. 36(a)(3) and relied upon the deemed

admissions to move for summary judgment. (Doc. # 56-1 at ¶ 8.)

The deemed admissions essentially eviscerate Plaintiff's entire case. Yet,

Plaintiff has not sought an enlargement of time to respond to the requests for

admission, nor has Plaintiff filed a motion to withdraw the deemed admissions. In her

response to the Motion for Summary Judgment (Doc. # 65), Plaintiff did not argue that

she should not be held to the deemed admissions. Instead of acknowledging that there

was a problem and addressing the deemed admissions and their impact on her case,

Plaintiff merely put her head in the sand, apparently hoping the problem would go away.

Pursuant to Fed. R. Civ. P. 36(a), the requests for admission were deemed

admitted as of September 30, 2021. As such, the Court must consider the requests for

admission "conclusively established" in light of Plaintiff's failure to file a motion to permit

withdrawal or amendment of the admissions. *Pearce v. State Farm Fire & Cas. Co.*, 20-

cv-03145-RMR-KMT, 2021 WL 6112877, at *1 (D. Colo. Dec. 27, 2021) (citing *Raiser*,

409 F.3d at 1246).

3.  The Motion for Summary Judgment Must be Granted

Summary judgment may be based on any matter deemed admitted. *Home

Indem. Co. v. Famularo*, 530 F. Supp. 797, 799 (D. Colo. 1982) (citation omitted).

Plaintiff has admitted that there is no causal connection between Mr. Gomez Ciprez's death and the actions of Adams County, Sheriff Reigenborn, Mr. Sauter, or Mr. Willis. (Doc. # 56-1 at ¶¶ 16–17.) Thus, there appear to be no genuine disputes as to any material fact in light of this admission.

Nonetheless, the Court analyzes each argument set forth in Defendants' Motion for Summary Judgment. As set forth above, now that the defense of qualified immunity has been raised, Plaintiff carries the burden to show: (1) "that the defendant's actions violated a specific statutory or constitutional right," and (2) that the right was "clearly established at the time of the conduct at issue." *Steffey*, 461 F.3d at 1221.

a.  *Eighth Amendment Claim*

Plaintiff has asserted an Eighth Amendment claim against the Adams County Defendants for failing to provide adequate medical care to Mr. Gomez Ciprez. (Doc. # 1 at 14–16.) The Eighth Amendment protection against infliction of "cruel and unusual punishments" encompasses deliberate indifference by jail officials. *Howard v. Waide*, 534 F.3d 1227, 1235 (10th Cir. 2008) (citing *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

> "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison medical providers in their response to the prisoner's needs or by guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."

*Estelle*, 429 U.S. at 104–05 (internal quotation marks and citations omitted).

A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citing *Estelle*, 429 U.S. at 97, 97 S.Ct. 285). "'Deliberate indifference'" involves both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citation omitted). The plaintiff must present sufficient evidence of both components to create a genuine issue of material fact. *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006).

i.      Objective Component

First, Defendants argue that Plaintiff has failed to establish the objective component as to Mr. Sauter and Mr. Wills. (Doc. # 56 at 7–9.) With respect to the objective component, "[u]nder the objective inquiry, the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self*, 439 F.3d at 1230. A medical need is serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (internal quotation marks and citations omitted). The question is not limited to whether the inmate's symptoms render a medical need sufficiently serious, but also extends to whether the potential harm to the inmate is sufficiently serious. *Mata*, 427 F.3d at 752.

Defendants argue that there is no genuine issue of disputed fact regarding whether Mr. Sauter and Mr. Wills had knowledge of Mr. Gomez Ciprez's medical

condition, nor is there evidence that his medical condition should be obvious to a lay person. Thus, Defendants argue that Plaintiff has failed to establish the objective component of the test. Defendants confuse the issue.

The objective component of deliberate indifference does not focus on the defendant's state of mind. Rather, "the purpose for this requirement is to limit claims to significant, as opposed to trivial, suffering . . . ." *Mata*, 427 F.3d at 753. Here, the parties do not dispute that Mr. Gomez Ciprez had numerous diagnosed illnesses requiring medication, and those illnesses ultimately led to his hospitalization and death. Thus, Mr. Gomez Ciprez's disease, hospitalization, and death are sufficient to establish the objective element of the deliberate indifference test. *Id.* at 755. Thus, there are genuine factual issues precluding summary judgment on the objective component of the deliberate indifference test.

ii.    Subjective Component

Next, the Adams County Defendants argue that Plaintiff has failed to establish that Mr. Sauter or Mr. Wills subjectively understood the serious medical risk faced by Plaintiff, but disregarded it. (Doc. # 56 at 9–10.) Under the subjective component, the defendant must have a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal citations omitted). In other words, the plaintiff must establish that the defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (internal quotation marks and citations omitted).

16

In light of the deemed admissions, the Court finds that Plaintiff has not produced evidence sufficient to support the subjective component of the deliberate indifference test. First, Plaintiff admitted that Mr. Sauter and Mr. Wills had no access to Mr. Gomez Ciprez's medical records while he was in custody. (Doc. # 56-1 at ¶ 13.) Plaintiff also admitted that Mr. Sauter and Mr. Wills had no personal knowledge of Mr. Gomez Ciprez's medical condition or his required medication. (Doc. # 56-1 at ¶¶ 10, 11.) These admissions, standing alone, demonstrate that Plaintiff has failed to establish the subjective competent of an Eighth Amendment claim as to Defendants Sauter and Wills.

In response to the Motion for Summary Judgment, Plaintiff submitted competing evidence in the form of emails and argues that Mr. Sauter and Mr. Wills had knowledge of Mr. Gomez Ciprez's medical conditions. (*See* Doc. ## 65 at 10–13; 65-1.) However, even if the emails contradict the deemed admissions, Plaintiff cannot present evidence that contradicts the deemed admissions to create a genuine issue of material fact at this stage of the proceedings. *See Dingler v. Equifax Info. Servs., L.L.C.*, 12-cv-455-MBF, 2014 WL 1317511, at *3 (N.D. Tex. Feb. 28, 2014), *report and recommendation adopted,* 12-cv-455-MBF, 2014 WL 1325574 (N.D. Tex. Mar. 31, 2014); *Nat'l Fire & Marine Ins. Co. v. Wells*, 301 F. Supp. 3d 1082, 1097 n.6 (N.D. Ala. 2018). Summary judgment must still be granted based on the deemed admissions. *GTE Directories Corp. v. McCartney*, 11 F. App'x 735, 737 (9th Cir. 2001) (finding that court may still grant summary judgment where competing evidence have been submitted to rebut deemed admissions, but the party did not file a motion to withdraw deemed admissions). Thus,

Plaintiff has failed to meet her burden to demonstrate the subjective component of an Eighth Amendment claim against Defendants Sauter and Wills

      iii.    Clearly Established Law

Finally, Defendants argue that Plaintiff cannot demonstrate that Defendants' actions violated clearly established law. (Doc. # 56 at 10–11.) "A right is clearly established . . . when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks and citations omitted). "A previous decision need not be materially factually similar or identical to the present case; instead, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (internal quotation marks and citations omitted). "'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

Plaintiff has failed to cite a single case demonstrating that Mr. Sauter or Mr. Wills violated a clearly established law or right. Accordingly, Plaintiff's Eighth Amendment claims against Mr. Sauter and Mr. Wills fail for this additional reason, and Defendants Sauter and Wills are entitled to qualified immunity.

b. *Fourteenth Amendment Claims*

Plaintiff also asserts claims under the Fourteenth Amendment against all the Adams County Defendants for failing to provide adequate medical care to Mr. Gomez Ciprez. (Doc. # 1 at 14–16.) Plaintiff argues that Mr. Gomez Ciprez was denied due process because Defendants failed "to provide protection and assistance" based on a special relationship, which caused harm to Mr. Gomez Ciprez. (Doc. # 1 at 17.)

Under the Fourteenth Amendment, a state cannot "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Generally, state actors are liable under the Due Process Clause of the Fourteenth Amendment only for their own direct actions, and not the actions of other private citizens. *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995). This guarantee consists of both procedural and substantive components. "In its substantive mode, the Fourteenth Amendment provides protection against arbitrary and oppressive government action, even when taken to further a legitimate governmental objective." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008). This includes "protect[ing] against the exercise of governmental power that shocks the conscience." *Id.*

In the context of a substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraints of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests in harms inflicted by other means. *DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 200, 109 S. Ct. 998, 103 L. Ed.

2d 249 (1989). The Tenth Circuit has recognized two exceptions to this general rule:
(1) "when the state has assumed a special relationship with and control over an
individual," and (2) "where officials created the very danger that caused the harm."
*Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1173 (10th Cir. 2013) (citations omitted).

Under the first recognized exception, "[a] special relationship exists when the
state assumes control over an individual sufficient to trigger an affirmative duty to
provide protection to that individual (e.g. when the individual is a prisoner or involuntarily
committed mental patient)." *Uhlrig*, 64 F.3d at 572 (citing *DeShaney*, 489 U.S. at 199–
200). Thus, a state actor becomes liable "under 42 U.S.C. § 1983 for failing to protect
people from harm if they have deprived those people of liberty and made them
completely dependent on the state for their basic needs." *Dahn v. Amedei*, 867 F.3d
1178, 1181 (10th Cir. 2017).

A substantive due process claim based on the special relationship doctrine has
four elements: (1) a special relationship; (2) the defendant either knew the plaintiff was
in danger or failed to exercise professional judgment regarding that danger; (3) the
defendant's conduct caused the plaintiff's injuries; and (4) the defendant's actions
shocked the conscience. *Id.* The Tenth Circuit has applied the special relationship
doctrine to prisoners. *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 923 (10th Cir.
2012) (listing applications of special relationship doctrine).

Although Defendants concede that a special relationship existed in this case
(Doc. # 56 at 12), they argue that Plaintiff has failed to show the remaining three

elements necessary to establish a Fourteenth Amendment claim in light of the deemed admissions. The Court agrees.

As set forth above, neither Mr. Sauter nor Mr. Wills knew that Mr. Gomez Ciprez had a medical condition or about his need to take medication. In light of the deemed admissions, there is no evidence that Mr. Sauter or Mr. Wills could have exercised professional judgment and failed to do so, because they had no knowledge about any danger. Further, Plaintiff admitted that Mr. Sauter and Mr. Wills were not the causal connection of Mr. Gomez Ciprez's death. Similarly, based on Plaintiff's admissions, Mr. Gomez Ciprez's death was caused from complications of a surgery he had after he was released from custody. Thus, Plaintiff cannot establish the third element, that Mr. Sauter or Mr. Wills caused Mr. Gomez Ciprez's death.

Finally, in light of the deemed admissions, Plaintiff also fails to show that any conduct by Mr. Sauter or Mr. Wills shocked the conscience. For a particular course of conduct to be shocking, the defendant's conduct must be of a "degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig*, 64 F.3d at 574. In light of Plaintiff's admissions that Mr. Sauter and Mr. Wills were unaware of Mr. Gomez Ciprez's medical needs and did not cause his death, Plaintiff cannot show that their conduct shocks the conscience.

Accordingly, Mr. Sauter and Mr. Wills are entitled to qualified immunity on Plaintiff's Fourteenth Amendment claims, and judgment should enter in their favor on this claim as well.

c.  *Claims Against Sheriff Reigenborn*

Plaintiff also brought claims against Sheriff Reigenborn in his individual capacity. As noted by Defendants, Section 1983 claims impose "liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential." *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011); *see also Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established."); *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.").

In this case, Plaintiff has presented no evidence that Sheriff Reigenborn had any personal participation in Mr. Gomez Ciprez's incarceration or medical care. In response to the Motion for Summary Judgment, Plaintiff simply argues that Sheriff Reigenborn was the elected official and is responsible for the failure to train. (Doc. # 65 at 18.) Further, Plaintiff admitted that Defendant "Reigenborn had no individual, personal knowledge of any medical condition suffered by, or medication required" by Mr. Gomez Ciprez. (Doc. # 56-1 at 5 ¶ 9.) Sheriff Reigenborn "had no personal contact" with Mr. Gomez Ciprez, nor did he "make any specific decisions with regard to" Mr. Gomez Ciprez's incarceration. (*Id.* at 4 ¶ 3.) Plaintiff also admitted that "there is no causal connection between the death" of Mr. Gomez Ciprez "and the actions of" Defendant Reigenborn. (*Id.* at 6 ¶ 16.) Accordingly, in light of the undisputed facts, Sheriff

Reigenborn is entitled to qualified immunity and judgment as a matter of law on the claims against him in his individual capacity.

### d.  Municipal Liability

Plaintiff's remaining claims are against Adams County, the Adams County Sheriff's Office, and the individual defendants in their official capacities as county employees. With respect to the individual defendants, "[a]n action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998). As a result, the claims against the individual defendants in their official capacities are viewed as claims against Adams County and the Adams County Sheriff's Office.

To state a claim for municipal liability against Adams County and the Adams County Sheriff's Office, Plaintiff must allege facts which, if true, would establish "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Commr's*, 151 F.3d 1313, 1316 (10th Cir. 1998) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A municipal policy or custom can take the form of:

> (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations omitted).

In this case, Plaintiff has failed to prove the municipal liability claims for the same reasons the other claims fail. Based on the deemed admissions, there is no causal connection between the actions of any of the Adams County Defendants and Mr. Gomez Ciprez's death. Further, Plaintiff admitted that Mr. Gomez Ciprez died when he was out of custody, and his death was caused by complications from surgery. Accordingly, because there is no municipal liability in this case, the claims against the individuals in their official capacities and the claims against Adams County and the Adams County Sheriff's Office must be dismissed.

### e.  State Law Wrongful Death and Negligent Failure to Train/Supervise

Finally, Plaintiff asserts state law claims for wrongful death and negligent failure to train. (Doc. # 1 at 17–19.) Pursuant to the Colorado Government Immunity Act ("CGIA"), Col. Rev. Stat. § 24-10-118(2), "[a] public employee is immune from all claims that lie or could lie in tort, unless . . .  the act or omission causing the injury was willful and wanton." The phrase willful and wanton is not defined by the CGIA. *Moody v. Ungerer*, 885 P.2d 200, 204–05 (Colo. 1994). However, the Colorado Supreme Court has defined willful and wanton conduct as exhibiting a "conscious disregard for the danger." *Martinez v. Estate of Bleck*, 2016 CO 58, ¶ 30, 379 P.3d 315, 323.

To overcome a public employee's immunity from suit, a plaintiff bears the burden of demonstrating that the official's conduct was willful and wanton, i.e. that it exhibited a "conscious disregard for the danger." *L.J. v. Carricato*, 2018 COA 3, ¶ 34, 413 P.3d 1280, 1288. At a minimum, plaintiff must allege "specific facts to support a reasonable

inference' that the employee was consciously aware that his . . . acts or omissions created danger or risk to the safety of others, and that he . . . acted, or failed to act, without regard to the danger or risk." *Id.*

In light of the deemed admissions, Plaintiff cannot overcome this high burden. Plaintiff has already admitted that there is no causal connection between the death of Mr. Gomez Ciprez and any of the Defendants. Further, Plaintiff has admitted that none of the individual Defendants had personal knowledge of Mr. Gomez Ciprez's medical condition or the medications he required. As a result, Plaintiff cannot overcome the individual Defendants' immunity from suit because she cannot demonstrate that Defendants' conduct was willful and wanton in light of the deemed admissions.

Accordingly, Defendants are entitled to immunity under the CGIA, and the Adams County Defendants are entitled to judgment as a matter of law on Plaintiff's state law claims.

## C.     Claims Against Adams County Work Release and Wellpath

Finally, Defendants assert—and Plaintiff does not dispute—that Adams County Work Release has not been served in this action. Accordingly, Plaintiff shall show cause in writing on or before May 20, 2022, why the claims against Adams County Work Release should not be dismissed with prejudice. *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").

In addition, Plaintiff shall show cause why the remainder of this action—including all claims against Adams County Work Release and Wellpath—should not be dismissed with prejudice in light of the deemed admissions.

### III.     CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- Defendants' Motion for Summary Judgment (Doc. # 56) is GRANTED;

- Summary judgment shall enter in favor of Defendants Adams County, Adams County Sheriff's Office, Richard Reigenborn, Vincent Sauter, and Cory Wills. Any motion for fees or costs shall be filed within 21 days.

- The Recommendation of United States Magistrate Judge (Doc. # 49) is ADOPTED and Plaintiff's Objections (Doc. # 50) are OVERRULED;

- Plaintiff shall SHOW CAUSE in writing by May 20, 2022, why the claims against Adams County Work Release should not be dismissed with prejudice; and

- Further, in light of the Court's Order, Plaintiff shall also SHOW CAUSE in writing by May 20, 2022, why the remainder of this action, including all claims against Wellpath, Adams County Work Release, and John Doe 1-10, should not be dismissed, with prejudice.

DATED:  May 6, 2022

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge